UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M.D. Doe, *et al.*,

                Plaintiffs,        Case No. 13-cv-11687

v.                                    Judith E. Levy
                                    United States District Judge

Livonia Public Schools, *et al.*,

                                    Mag. Judge Mona K. Majzoub

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' UNTIMELY DISCLOSED EXPERT WITNESS REPORT [255]

Plaintiffs filed this lawsuit on April 15, 2013. (Dkt. 1.) On October 22, 2014, the Honorable Mark A. Goldsmith, who handled the consolidated discovery for this and two related cases, issued an order setting January 13, 2015 as the cutoff date for "[p]laintiffs' experts' disclosures for all experts whose report or testimony may be used in opposition to summary judgment or otherwise in support of liability." (Dkt. 69 at 3.)

Plaintiffs retained Sharon Hall, Ed.D., as an expert. On January 30, 2015, plaintiffs disclosed a report from Hall that contained three

opinions regarding liability. (*See* Dkt. 252-32.) Defendants deposed Hall in March of 2015. (Dkt. 244-41.)

Following two administrative stays and the issuance of *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016), which arose from one of the cases consolidated for discovery with this case, the Court ordered new summary judgment briefing on February 22, 2017. (Dkt. 240.)

Defendants filed a joint motion for summary judgment on March 31, 2017. (Dkt. 244.) Plaintiffs responded to that motion for summary judgment on May 5, 2017. (Dkt. 252.) The response included an "Affidavit and IEP (Individualized Education Program) Report of Sharon Hall." (Dkt. 252-33.) The affidavit was dated May 3, 2017. (*Id.* at 4.) The report was dated August 24, 2015. (*Id.* at 5.) The report analyzes whether the three minor plaintiffs' IEPs were in compliance with the federal Individuals with Disabilities Education Act ("IDEA") and Michigan state policies, and contains new and different analysis from that found in Hall's first expert report.

Defendants state that this second affidavit and report were not disclosed to them until the response to the motion for summary

judgment was filed. (*See generally* Dkt. 255.) Plaintiffs do not dispute this, but state that Dr. Hall had sent the second report to plaintiffs' counsel in August 2015, but he did not know that he had received it. (Dkt. 258-3 at 4.) At some point between March 31, 2017 and May 5, 2017, plaintiffs' counsel contacted Dr. Hall in connection with plaintiffs' response to the motion for summary judgment. (*Id.*) During that contact, Dr. Hall informed plaintiffs' counsel that she had sent the second report, and then sent it to plaintiffs' counsel again. (*Id.*) Plaintiffs' counsel then included the second report as an exhibit to the response to the motion for summary judgment. (Dkt. 252-33.)

Fed. R. Civ. P. 26(a)(2)(B) requires that the disclosure of expert testimony must be accompanied by a written report that must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

"District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Matilla v. S. Ky. Rural Elec. Co-op. Corp.*, 240 F. Appx. 35, 42 (6th Cir. 2007) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000). The sanctions set forth in Rule 37(c)(1) are "automatic and mandatory . . . unless non-disclosure was justified or harmless." *Dickenson v. Cardiac and Thoracic Surgery of Eastern Tenn.*, 386 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004)).

Plaintiffs do not contend that they disclosed the second report to defendants at any point before May 5, 2017, when they filed their response to the motion for summary judgment. Plaintiffs make two arguments regarding the permissibility of the second report. First, they argue that the second report is actually a "supplement" to the first

report, permitted under Fed. R. Civ. P. 26(e)(2). Under that rule, "[a]ny additions or changes to [information included in the report and to information given during the expert's deposition] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

Second, they argue the disclosure of the second report was substantially justified and harmless to defendants. They argue that because plaintiffs' counsel stated at Dr. Hall's deposition that she might later be asked to evaluate plaintiffs for purposes of a report on damages, the creation and submission of a second, undisclosed report in response to a motion for summary judgment was justified. (Dkt. 258 at 19-20; Dkt. 258-2 at 19.)

The August 24, 2015 report is a second expert report, not a supplement to the first report disclosed to plaintiffs on January 30, 2015. The first report contains the following three opinions:

1. Sharon Turbiak's behavior, as outlined in the Schultz report, including both his narrative and attachments, in my opinion, can only be properly described as bullying, abusive, and outside the parameters of any reasonably accepted teaching techniques, and therefore cannot be explained as a "professional" difference of opinion of teaching style or appropriate pedagogical practice.

5

2. The students in this classroom, even if they were not the direct subject of Sharon Turbiak's physical and emotional abuse and bullying were, none the less, negatively impacted by this abusive and bullying atmosphere.

3. There is no reasonable basis to believe that any of the students in Sharon Turbiak's classroom during the 2011-2012 school year were receiving a free, appropriate, public education (FAPE) as envisioned by IDEA, and Section 504 of the Rehabilitation Act.

(Dkt. 252-32 at 11.)

The second report contains opinions in response to these two questions:

I. Are the educational goals and objectives stated for each student in accordance with the federal IDEA mandates and Michigan state policies?
II. Is each student's progress for each of their IEP goals and objectives documented in accordance with the federal IDEA and Michigan state policies?

(Dkt. 252-33 at 5.)

The first report concerns the appropriateness and effect of defendant Sharon Turbiak's classroom behavior on plaintiffs' ability to receive a free, appropriate public education, as well as the effect of her behavior on other students. The second report concerns the legal

6

appropriateness of plaintiffs' IEPs under the IDEA and Michigan state policies. Plaintiffs argue that the second report supplements the first, because Dr. Hall's third opinion in her first report discusses IEPs. (*See* Dkt. 252-32 at 34-40.) The second report, notably, does not address damages the plaintiff may have suffered.

The opinion in the first report concludes that "[i]t is unlikely that students with significant cognitive disabilities will be able to meet the goals and objectives in their IEPs if they are not receiving the special education instruction in their IEP[s]." (*Id.* at 40.) The second report does not analyze whether the plaintiffs' IEPs were met. It analyzes whether their IEPs as designed complied with relevant federal and state law and policies. That is a different analysis altogether, and it cannot be fairly said to "supplement" the first report, because it does not speak to the validity, support, or basis for any of the opinions in the first report.

Because the August 24, 2015 expert report is a separate report, plaintiffs were required to disclose it "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The time to disclose expert reports used in support of or opposition to a motion for summary

7

judgment was on January 13, 2015, or, at the latest, on January 30, 2015, when plaintiffs disclosed the first expert report.

Plaintiffs have not moved to extend the time to file expert reports, and no such extension has been granted. Because of that late disclosure, defendants have had no opportunity to depose Dr. Hall regarding the contents of the second expert opinion. Contrary to plaintiffs' contention, raising the possibility that Dr. Hall could issue a second expert report regarding damages did not put defendants on notice that she would issue a second expert report regarding liability, or that she had done so nearly two years before the report was first disclosed in response to defendants' motion for summary judgment.

Plaintiffs' failure to disclose the expert report until almost two years after it was written and almost two and a half years after the time to disclose expert reports for use in connection with summary judgment was neither substantially justified nor harmless. Plaintiffs' stated reason for not disclosing the report is that their counsel's office misplaced the report for almost two years, which does not substantially justify its lack of disclosure. Defendants also moved for summary judgment with no knowledge of the second expert report, meaning that

they were unable to account for or address the contents of that report in their primary brief.

Plaintiffs also blame the delay in disclosure on the Court's stay of this case on August 24, 2015 (Dkt. 223), which was lifted on November 5, 2015 (Dkt. 224), and holding consideration of the pending dispositive motions in abeyance on April 12, 2016, (Dkt. 233), which was lifted on December 2, 2016. (Dkt. 236.) Plaintiffs provide no reason why they could not have disclosed Dr. Hall's second report to defendants between November 5, 2015, and April 12, 2016, a period of over six months, or between December 2, 2016, and March 31, 2017, when defendants' motion for summary judgment was filed. The Court's management of this case does not explain the delay in disclosure of the second expert report, particularly in light of the fact that the second expert report was still prepared over seven months after disclosure of such reports was required.

For the reasons set forth above, it is hereby ordered that:

Defendants' motion to strike Dr. Hall's second expert report and affidavit (Dkt. 255) is GRANTED; and

Dr. Hall's second expert report (Dkt. 252-33), pursuant to Fed. R. Civ. P. 37(c), is STRICKEN from plaintiffs' response to the motion for summary judgment, and will not be considered in the Court's analysis of defendants' pending motion for summary judgment. The Court will determine whether the report may be used at any later stage of this litigation, including trial, if and when the relevant time arises.

IT IS SO ORDERED.

Dated: January 22, 2018  　　　s/Judith E. Levy
Ann Arbor, Michigan  　　　JUDITH E. LEVY
　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 22, 2018.

　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　Case Manager